IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HENRY HERSMAN, | ) |
| Petitioner, | ) |
| v. | ) Case No. 09-cv-00118-DRH-DGW |
| GERALDO ACEVEDO, | ) |
| Respondent. | ) |

**REPORT AND RECOMMENDATION**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by Chief United States District Judge David R. Herndon pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the Amended Petition for Writ of Habeas Corpus filed by Petitioner Henry Hersman pursuant to 28 U.S.C. § 2254 (Doc. 29). For the reasons set forth below, it is **RECOMMENDED** that Petitioner Henry Hersman's Amended Petition for Habeas Corpus (Doc. 29) be **DENIED**, the case be **DISMISSED**, and that the Court adopt the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

The facts determined by a state court are presumed to be correct unless rebutted by petitioner with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Baddell v. Correll*, 452 F.3d 648, 659 (7th Cir. 2006). The following factual background relating to Petitioner Henry Hersman's claims has been taken from the Rule 23 unpublished direct appeal decision on Petitioner's case rendered by the Illinois Fourth District Appellate Court on March 23, 2007:

> In December 2002, defendant was married to and living with Sally Jane Hersman, and they had two children together. (They later divorced in 2003). On December 19, 2002, defendant struck Sally Jane on the head, and the police arrested him for

his actions. The next day, Sally Jane obtained an order of protection against defendant, and she and the children went to her parents' home. Defendant was released on bond and telephoned Sally Jane's parents' house around 7 p.m. Defendant made six to seven more phone calls, and Sally Jane's father, James Arbuthnot, answered the calls each time and informed defendant of the order of protection.

Around 3 a.m. on December 21, 2002, defendant sent a burning vehicle into the Arbuthnot home while Sally Jane, her parents, and the two children were inside. The vehicle caught the house on fire, and James was injured by a brick wall falling on him. After the impact, James heard the defendant state he would kill all of them. Kevin Smith, a State fire marshall, investigated the fire and found the fire was started in the rear passenger side of the vehicle by the use of gasoline and an open flame.

On December 23, 2002, the State brought 17 charges against defendant for his actions on December 21, 2002. In April 2003, a 25-page letter from defendant was filed, in which he set forth "the whole story behind the charges [and] allegations against [him] and what drove [him] to insanity." In the letter, defendant requested a psychiatric evaluation. After the letter was filed, defendant's attorney entered his appearance and filed a petition for a fitness examination pursuant to section 104-13 of the Code of Criminal Procedure of 1963 (Criminal Procedure Code) (725 ILCS 5/104-13 (West 2002)), which the trial court granted. In August 2003, defendant filed a 15-page letter, again stating that he was insane at the time of the December 2002 incident and contending he had a mental disorder.

In November 2003, Stephen L. Hardy, a clinical psychologist submitted his report, finding defendant was fit to stand trial. In the report, Hardy diagnosed defendant with the following: (1) bipolar I disorder, most recent episode manic (provisional); (2) a psychotic disorder not otherwise specified; (3) alcohol dependence in a controlled environment; (4) cannabis abuse in a controlled environment; (5) cocaine abuse in a controlled environment; (6) borderline personality disorder (provisional); and (7) a seizure disorder. Hardy stated defendant's mental illness did not substantially impair his ability to understand the nature and purpose of the proceedings against him and to assist in his own defense. Hardy noted, prior to his interviews of defendant, defendant had been prescribed Trazodone, Tegretol, Dilantin, Lithium, BuSpar (trademark name for buspirone hydrochloride), Zoloft and Zyprexa.

Hardy further stated defendant (1) knew he was charged with criminal offense and had to stand trial on them and (2) could cite the charges. Defendant could also describe the circumstances surrounding him at the time and place of the alleged offenses. Further, defendant expressed satisfactory knowledge of the roles and functions of various court personnel. Finally, defendant's "ability and present

condition to display appropriate behavioral and emotional responses while participating in the trial process are satisfactory."

After reviewing Hardy's letter, the trial court found defendant fit to stand trial without a fitness hearing.

In January 2004, defendant sent the trial court a letter, stating he was confused by a recent court proceeding and questioning whether he could raise an insanity defense without another psychiatrist. That same month, defense counsel filed a petition for fees for a psychological examination by Dr. John Rabun, which the court allowed.

In February 2004, defendant sent the trial court another letter, requesting a change in venue and complaining about defense counsel's performance. In March 2004, defendant filed a petition for fees for a psychological examination by Hardy, which the court again allowed. On April 1, 2004, the court ordered the scheduling of an appointment regarding defendant's medications. The Tri-County Counseling Center filed a letter, stating an appointment was scheduled for April 21, 2004, to evaluate the effectiveness of defendant's psychotropic medication. The record contains no other information about the appointment regarding defendant's medications. In June 2004, defendant filed a motion for change of venue under section 114-6 of the Criminal Procedure Code (725 ILCS 5/114-6 (West 2002)).

On July 14, 2004, the State charged defendant with two counts of unlawful delivery of a controlled substance for his actions in May 2004 (Case No. 4-04-0946). According to the information, while in Jersey County Jail defendant delivered to Patrick Jones a substance containing hydrocodone, a controlled substance. On that same date, the trial court held a hearing, and defendant pleaded guilty to 13 of the 19 charges against him pursuant to a plea agreement. Under the plea agreement, defendant's sentences would be capped at 30 years, all of his sentences would run concurrently, he could present evidence he was guilty but mentally ill, and the remaining charges would be dismissed. Later, at the State's request, the court dismissed four of the five aggravated arson charges.

The next day, a letter from defendant was filed, in which he requested to withdraw his guilty plea. Defendant wrote letters with the same request that were filed on July 16, 20 and 21, 2004. On July 23, 2004, defense counsel filed a first-amended motion to withdraw guilty plea, asserting (1) the combination of defendant's medications prevented defendant from understanding the true nature of the proceedings when he pleaded guilty and (2) defendant was intimidated by another inmate's statement on the morning of the plea that a sheriff's deputy stated defendant would face a much longer prison sentence if he did not take the deal. Defendant sent at least 10 more letters to the court between the filing of defense counsel's postplea motion and defendant's sentencing hearing.

At the September 22, 2004, sentencing hearing, defendant testified against his counsel's wishes and made a statement of allocution. Defendant stated that, on the night of the incident, he telephoned his in-law's house to speak with Sally Jane, and James would not let him talk to her. James called him a "punk" and told him "to come up and get a piece of him." Defendant also stated Sally Jane had shot him three times during their marriage with the most recent time being November 2002. After defendant's statement of allocution, the trial court found defendant guilty but mentally ill. The court also noted it had considered defense counsel's arguments of mitigating factors but concluded none existed. The court then sentenced defendant to concurrent prison terms of 28 years for each count of attempt (first degree murder), 20 years for one count of aggravated arson, 10 years for possession of an incendiary device, and 5 years for each count of unlawful delivery of a controlled substance.

In October 2004, defendant filed a renewal of his motion to withdraw his guilty plea and vacate judgment and a motion to reconsider sentence, in which he asserted, inter alia, the trial court failed to consider his mitigating evidence. After a November 2004 hearing, the trial court denied defendant's postplea motions. The court again noted it had considered defendant's arguments that evidence established mitigating factors but found James's provocation was neither substantial grounds not immediate grounds.

(Doc. 39-3, pgs 2-7).

*Direct Appeal*

Hersman, with the assistance of counsel, appealed the judgment, arguing that the trial court erred in: 1) failing to hold a fitness hearing; 2) refusing to allow defendant to withdraw his guilty plea; and 3) failing to find any factors in mitigation at sentencing (Doc. 39-1). By order dated March 23, 2007, the Illinois Court of Appeals affirmed the judgment (Doc. 39-3).

On June 15, 2007, Hersman, proceeding *pro se*, requested leave to file a late Petition for Leave to Appeal ("PLA") and corresponding PLA urging the Illinois Supreme Court to reverse the appellate court's findings on each of the issues raised in his direct appeal (Doc. 39-4). The Illinois Supreme Court summarily denied Hersman's PLA on November 29, 2007 (Doc. 39-5).

*Post-Conviction Proceedings*

While his direct appeal was ongoing, Hersman, with the assistance of counsel, filed a post-conviction petition on June 13, 2005 (Doc. 39-10, pgs. 110-112). Hersman argued that his five 28-year sentences violated the constitutional prohibition against cruel and unusual punishment and sought to have those sentences reduced to 26 years so that he could be placed in a psychiatric facility (Docs. 39-9; 39-10, pgs. 110-111). After a hearing, the trial court granted the petition and entered an amended sentencing order reducing Hersman's five attempted first degree murder sentences to 26 years (Docs. 39-9; 39-10, p. 116). The State appealed, contending that the trial court erred by granting the post-conviction petition and reducing Hersman's sentence (Doc. 39-6). On March 23, 2007, the appellate court reversed the trial court's granting of Hersman's post-conviction petition and remanded the action to the trial court to vacate the amended sentencing order (Doc. 39-9).

Hersman, proceeding *pro se*, filed a second successive post-conviction petition on December 1, 2005 claiming that: 1) trial counsel was ineffective by failing to call certain witnesses to testify on his behalf; 2) the trial court erred in failing to conduct a fitness hearing; 3) the trial court erred by not allowing petitioner to withdraw his guilty plea; and 4) the trial court erred in failing to consider mitigating evidence at sentencing (Doc. 39-10, pgs. 120-122). The trial court denied the successive petition, finding that the petition was not supported by an affidavit and was untimely filed (Doc. 39-10, p. 124).

Hersman filed a third and fourth *pro se* successive post-conviction petition on March 23, 2006 and June 9, 2006, raising virtually identical claims as set forth in his second successive post-conviction petition (Doc. 39-10, pgs. 126-127). The trial court summarily denied the third successive petition because it was not signed, verified or supported by affidavit. *Id.* at 129. There is insufficient information in the state record to determine whether Herman's fourth

successive petition was denied. Nevertheless, Hersman acknowledges that each of his successive petitions were denied by the trial court (Doc. 29, p. 2).

On August 29, 2008, Hersman filed a fifth *pro se* post-conviction petition, along with a motion for leave to file a post-conviction petition and motion to withdraw his guilty plea (Doc. 39-10, pgs. 215-221). The petition raised the following claims: 1) trial counsel was ineffective for (a) failing to properly prepare for trial, (b) failing to withdraw from the case when asked to do so, (c) failing to maintain sufficient contact with petitioner, d) failing to establish that petitioner was sane at the time of the offense, and (e) coercing petitioner into pleading guilty; and 2) the trial court erred by (a) failing to hold a fitness hearing, (b) not allowing petitioner to withdraw his guilty plea, and (c) failing to consider mitigating evidence at sentencing. *Id.* The trial court denied Herman's motions on the basis that each issue "has been addressed at the trial level and by the Appellate Court"[1] (Doc. 39-10, p. 230).

*Federal Habeas Petition*

Hersman filed his initial *pro se* petition for writ of habeas corpus in federal court on February 1, 2009. He raised the following grounds for relief:

**Ground 1**: trial counsel was ineffective by:

(a) failing to call thirty-three witnesses and depose two witnesses who testified at trial;

(b) failing to file the proper motions ( i.e., motion to dismiss, motion to reduce charges and motion to withdraw guilty plea);

(c) coercing petitioner into pleading guilty;

(d) maintaining insufficient contact with petitioner; and

(e) failing to withdraw from the case when asked to do so.

---

[1] Hersman did not raise any claims for ineffective assistance of trial counsel claims in his direct appeal, nor did he appeal the denial of his post-conviction petitions.

**Ground 2:** the trial court violated his due process rights by:

(a) failing to hold a fitness hearing;

(b) failing to admonish him regarding his rights;

(c) failing to provide him with experienced counsel;

(d) denying his motion to change venue;

(e) allowing the testimony of witnesses who were coached on what to say by the prosecutor; and

(f) allowing the victims to dictate to the prosecutor the length of the prison sentence.

**Ground 3**: the trial court violated his Eighth Amendment rights by:

(a) failing to consider mitigating evidence at sentencing;

(b) sentencing petitioner to a sentence of 28 years at 85%;

(c) setting bail at $2,000,000; and

(d) allowing trial counsel to tell petitioner the court would be lenient because of petitioner's mental illness

(Doc. 1). After an initial review of the petition and supporting materials, the Court appointed an attorney to represent Herman (Doc. 7). Appointed counsel was granted leave to file an amended petition on January 15, 2010 (Doc. 15). On April 10, 2010, appointed counsel filed an "Amendment of Petition and Memorandum" which narrowed the focus of the initial petition, and advanced only one ground for relief – ineffective assistance of counsel (Doc. 29). Appointed counsel discussed the viability of the two other claims included within the initial petition – the claims for violations of petitioner's due process rights and Eighth Amendment rights – but ultimately concluded that the following claims were "ripe for review" before this Court:

1) whether the Petitioner asked his public defender to call thirty-three witnesses and the subjects about which such witnesses would testify;

2) whether the public defender's performance prejudiced the defense by telling the Petitioner that he would get 60 years if he did not take the 6 to 30 years offered by the state of Illinois;

3) whether the Petitioner and his public defender had sufficient contact;

4) whether the public defender should have withdrawn at the request of the Petitioner; and

5) whether the public defender's statements that the court would be lenient at sentencing because of the Petitioner's mental illness misled the Petitioner and prejudiced his defense.

(Doc. 29). Respondent filed an answer on June 25, 2010 (Doc. 38). The Court construes appointed counsel's "Amendment of Petition and Memorandum" to be an amended petition. Accordingly, the Amended Petition (Doc. 29) is operative, and the Court will not consider any claims that were raised in the initial petition that were not included within the amended petition.

**ANALYSIS**

**I. STANDARD**

This petition is governed by the provisions of the Anti-Terrorism and Death Penalty of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Court can only grant an application for habeas relief if it meets the requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established Supreme Court precedent when it reaches a legal conclusion that is opposite to a legal conclusion announce by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Owens v. Frank*, 394 F.3d 490, 496-97 (7th Cir. 2005). A state court's conclusion is an "unreasonable application" of Supreme Court precedent when the state court identifies the correct legal rule as determined by the Supreme Court but unreasonably applies it to the facts of the case, unreasonably extends a legal principle from existing precedent, or refuses to extend that principle to a new context where it should apply. *Owens*, 394 F.3d at 496-97. As pronounced by the Supreme Court:

> We have made clear that the "unreasonable application" prong of 2254(d)(1) permits a federal habeas court to "grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts" of petitioner's case. In other words, a federal court may grant relief when a state court has misapplied a "governing legal principle" to "a set of facts different from those of the case in which the principle was announced." In order for a federal court to find a state court's application of our precedent "unreasonable," the state court's decision must have been more than incorrect or erroneous. The state court's application must have been "objectively unreasonable."

*Wiggins v. Smith*, 539 U.S. 510, 520-521 (2003) (internal citations omitted). The writ may not issue merely because the state court applied clearly established federal law erroneously or incorrectly; the application also must be unreasonable. *Williams*, 529 U.S. at 411; *see also Owens*, 394 F.3d at 497. A petitioner bears the burden to show that he is entitled to relief. *See Harding v. Sternes*, 380 F.3d 1-34, 1043 (7th Cir. 2004).

The Supreme Court recently reiterated that a federal court on habeas review should treat a state court's decision with "deference and latitude." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011). Under 28 U.S.C. § 2254(d), a federal court is barred from "relitigating" any claim

adjudicated on the merits in state court, with two exceptions: (1) where a state court's decision "was contrary to" federal law then clearly established by the Supreme Court or if it "involved an unreasonable application" of federal law or (2) where a state court's decision "was based on an unreasonable determination of the facts" based upon the state court's review of the record. *Harrington*, 131 S.Ct. at 785. A federal court's inquiry in habeas is not whether a state court's decision was an incorrect interpretation of the underlying constitutional claim but, rather, whether the application of federal law was unreasonable. *Id.* at 787. Habeas corpus is not "a substitute for ordinary error correction through appeal," and the unreasonableness standard is "difficult to meet" because "it was meant to be." *Id.* at 786. Because the emphasis is on the reasonableness, not the correctness, of a state court's decision, federal habeas relief is precluded when "fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id.*

## II. PROCEDURAL DEFAULT

Before considering the merits of a federal habeas petition, a federal court must ensure that the petitioner has exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). The exhaustion requirement is premised on concerns of comity; the state courts must be given the first opportunity to address and correct violations of their prisoner's federal rights. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). For the opportunity to be meaningful, the petitioner must "fairly present" his federal claims "through one complete round of state-court review, either on direct appeal of his conviction or in his post-

conviction proceedings." *Lewis*, 390 F.3d at 1025 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)). "A petitioner fairly presents his federal claim to the state courts when he articulates both the operative facts and the controlling legal principles on which his claim is based." *Perruquet*, 390 F.3d at 519-520 (internal citations omitted).

The companion procedural default doctrine precludes a federal court from reaching the merits of a habeas petition when either: (1) the claim was not fairly presently to the state courts and the opportunity to raise that claim now has passed; or (2) the claim was presented to the state courts and was denied on the basis of an adequate and independent state law procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Perruquet*, 390 F.3d at 514.

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice by showing that the court's failure to consider the claim would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. "To establish cause, Hersman must show that "an external impediment" prevented him from presenting his arguments before the state courts. *Bintz v. Bertrand*, 403 F.3d 864, 859 (7th Cir. 2005). To show prejudice, he must present evidence that the errors at trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Perruquet*, 390 F.3d at 515 (quoting *United States v. Frady*, 456 U.S. 152 (1982) (emphasis omitted).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Hersman claims that his trial counsel was ineffective in: (1) failing to call thirty-three witnesses and the subjects about which such witnesses would testify at trial; (2) coercing petitioner into pleading guilty by telling petitioner that he would be sentenced to 60 years in prison if he did not take the deal offered by the state of Illinois; (3) failing to maintain sufficient contact with petitioner; (4) failing to withdraw as counsel when asked to do so by petitioners;

and (5) misleading petitioner to believe that the trial court would be lenient at sentencing because of petitioner's mental illness. These claims were raised for the first time in Hersman's second, third, fourth and fifth successive post-conviction petitions filed on December 1, 2005, March 23, 2006, June 9, 2006 and August 29, 2008. Each of these petitions was denied, and Hersman did not file any subsequent appeals. These claims, therefore, have not received one complete round of state court review. Consequently, the claims have not been exhausted, and they are procedurally defaulted.

Thus, this Court is barred from considering the claims on their merits unless Hersman can demonstrate cause and prejudice for the default. Hersman does not acknowledge that his ineffective assistance of counsel claims are procedurally defaulted; therefore, he makes no argument regarding cause and prejudice. Nevertheless, the Court has reviewed the record and has found no cause or prejudice for Hersman's failure to raise these claims in his direct appeal or in an appeal from the dismissal of his post-conviction petitions. *See Harris v. McAdory*, 334 F.3d 665, 668 (7th Cir. 2003) (neither mental illness nor pro se status are cause to excuse procedural default). Likewise, the record does not reveal a fundamental miscarriage of justice, which requires the showing of a constitutional violation "which probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Hersman makes no contention that he is actually innocent. Accordingly, the Court finds no cause and prejudice for the procedural default of Hersman's claims, nor does it find that a fundamental miscarriage of justice occurred that would save any of the defaulted claims.

## CONCLUSION

Based upon the foregoing, it is **RECOMMENDED** that Petitioner Henry Hersman's Amended Petition for Habeas Corpus (Doc. 29) be **DENIED**, the case be **DISMISSED**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have fourteen (14) days after the service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: February 13, 2012**

**DONALD G. WILKERSON**
**United States Magistrate Judge**